IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IRINEO GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  06-1101-MLB |
| | ) | |
| AMADOR ELIZARDO, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Before the court is defendant Gary Morgan's cross motion for summary judgment (Doc. 128), supplemental motion for summary judgment (Doc. 137), motion for reconsideration (Doc. 159) and motion to compel payment under Fed. R. Civ. P. 26(b)(4)(C) (Doc. 169).

This case has a somewhat messy procedural background. Both plaintiff and defendant filed motions for summary judgment on the issue of Gary Morgan's employment status as an employee of Northwest Cotton Growers (NCG) or an independent contractor. (Docs. 93, 128). On August 28, 2007, the court denied those motions. (Doc. 165). However, Gary Morgan's motion for summary judgment also sought dismissal of the corporate defendants and the vicarious liability claim against Morgan. Plaintiff's response to defendant's motion did not address these issues. (Doc. 151). Gary Morgan was ordered to submit a letter to plaintiff outlining the specific facts that correlate with those remaining issues in his motion. Morgan submitted

a letter to plaintiff's counsel. (Doc. 175, exh. A).[1] Plaintiff has responded. (Doc. 175). All motions before the court have been fully briefed and are ripe for decision. (Docs. 129, 138, 147, 154, 158, 161, 162, 170, 174, 175).

## I. FACTS[2]

After ginning season, NCG's cotton gin in Moscow, Kansas is rebuilt. The work is done by fewer individuals than the gin uses during the ginning season. The work is supervised by NCG's superintendent. In 2004, NCG's superintendent was Gary Morgan. NCG's manager was Jerry Stuckey. Plaintiff was working at NCG as a ginner. Plaintiff understood that Morgan was the "boss."

Amardor Elizardo was also working at NCG as a ginner. Prior to his employment with NCG, Morgan was filling the role as a ginner. Morgan and Stuckey called other gins in order to find a replacement ginner. Morgan informed Stuckey that Elizardo was willing to come to NCG and work as a ginner. Elizardo then began his employment at NCG. Elizardo was paid by the hour and issued 1099's. Elizardo testified that he is not in business for himself, but uses the name M-3 Gin Service on a business card.

On May 13, 2004 Elizardo was operating a forklift to lift a piece

---

[1] While Morgan was ordered to draft a letter outlining the facts that specifically relate to the remaining issues in his motion, Morgan instead stated that he could not rule out any of the 105 facts as not relevant. Plaintiff responded to all 105 facts. The court, however, will not address all of the facts in the motion. Most of the facts set forth in the motion address Morgan's employment status. The court has already denied defendant's motion for summary judgment on Morgan's employment status and declines to revisit facts which solely deal with Morgan's status.

[2] Additional facts will be discussed, where appropriate, throughout the order.

of equipment. Morgan observed the rear end of the forklift rise up and instructed Elizardo to stop working until he was finished with a meeting. Morgan finished his meeting and Elizardo instructed plaintiff to remove a bolt from the equipment. The equipment then fell on plaintiff and caused injuries.

Plaintiff asserts that both Morgan and Elizardo are liable for his injuries under Kansas law. Morgan responds that he is an employee of NCG and therefore plaintiff's sole remedy is workers' compensation. Based on the disputed facts as to Morgan's status, the court denied defendant's motion for summary judgment as to Morgan. (Doc. 165). Additionally, Defendant Gary Morgan also asserts that he cannot be vicariously liable for Elizardo's negligence (Doc. 128) and plaintiff's claims of negligence *per se* fail as a matter of law. (Doc. 137). Moreover, Morgan moves for dismissal of all corporate defendants on the basis that plaintiff has failed to establish that those defendants were involved with any activity at NCG. (Doc. 128).

## II.  SUMMARY JUDGMENT STANDARDS

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc.,

144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**III. ANALYSIS**

**A. Morgan's Supplemental Motion for Summary Judgment (Doc. 137)**

In the pretrial order, plaintiff has asserted the following claims:

> [P]laintiff alleges that defendants are liable for negligence per se for violation of the following federal regulations or in the alternative, the federal regulations provide the applicable minimum standard of care that must be followed.
>
> 1. Safe Operation of Forklift Trucks, Materials Handling and Logistics by Brad Procellato;
>
> 2. NIOSH Alert: Preventing Injuries and Deaths of Workers Who Operate or Work Near Forklifts, NIOSH Publication No. 2001-109;
>
> 3. Standards of Powered Industrial Trucks, 29 CFR §1910.178;
>
> 4. Compliance Assistance for the Powered Industrial Truck Operator Training Standards, Directives CPL 02-01-028-CPL 2-1.28A;
>
> 5. Safety Standards for Low Lift and High Lift Trucks, ASME B56.1-2004, Revision of ASME B56.1-2000;
>
> 6. Safety Standards for Rough Terrain Forklift Trucks ASME/ASNI B56.6-1987;
>
> 7. Powered Industrial Truck Training Content,

-4-

>    Certification and Record Maintenance, Standard Interpretations, 10/01/1999;
>
>    8. Material Handling Equipment, 29 CFR 1926.602;
>
>    9. Powered Industrial Truck Operator Training; Final Rule, Federal Registers 63:66237-66274;and
>
>    10. Safety Standards for Rough Terrain Forklift Trucks, ASME B56.6-2002, Revision of ASME B56.6-1992.

(Doc. 109 at 6-7).

Defendant asserts that these claims are not actionable as negligence *per se*. In order to state a claim for negligence *per se* in Kansas, a plaintiff must allege "(1) a violation of a statute, ordinance or regulation, and (2) damages which result from the violation." Vanderwerf v. SmithKlineBeecham Corp., 414 F. Supp.2d 1023, 1026 (D. Kan. 2006)(citing OMI Holdings, Inc., v. Howell, 260 Kan. 305, 339, 918 P.2d 1274, 1296 (1996)). Defendant asserts that seven of plaintiff's claims[3] are not based on a statute, ordinance or regulation and therefore cannot support a claim of negligence *per se*. Plaintiff does not respond to this argument. It is plaintiff's burden to establish that his claims are actionable and that Kansas law intended an individual right of action for injury arising out of the violation. Id. Plaintiff has failed to do so.

As to items numbered 3, 8 and 9, defendant asserts that plaintiff does not have an individual right of action for violations of OSHA regulations. "A violation of a statute that neither establishes nor intends a private right of action cannot give rise to a negligence per se claim." Id. at 1026-27. In Garay v. Missouri Pacific R. Co., 38 F. Supp.2d 892 (D. Kan. 1999), Senior District Judge Wesley E. Brown

---

[3] Items numbered 1, 2, 4, 5, 6, 7, and 10.

determined that a private right of action did not exist based on the statutory language in 29 U.S.C. § 653(b)(4).  The court agrees.  That statutory provision reads as follows:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4).

In this court's opinion, regardless of the status of the individual defendants as employees or independent contractors, the language of this statute precludes any individual injured during the course of his employment from sustaining a private right of action for violations of OSHA regulations.  See Garay, 38 F. Supp.2d at 901 ("Leaving aside the question of whether the defendants, who were not Garay's employers, had any duty to him under OSHA, the court concludes that § 653(b)(4) precludes a negligence per se cause of action based on OSHA violations."); Williams v. KOPCO, Inc., No. 94-1451, 1998 WL 159516 (D. Kan. Mar. 31, 1998)(no private right of action under OSHA for an independent contractor who was injured while performing her job duties).

Accordingly, defendant's motion for summary judgment is granted. (Doc. 137).[4]

### B. Morgan's Vicarious Liability for Elizardo's Negligence

Morgan asserts that even if Elizardo is negligent, Morgan cannot

---

[4] The court expresses no opinion at this time as to whether evidence of the standards set forth in the pretrial order might be admissible at trial for some purpose other than to establish negligence per se.

be liable for that negligence. In order to establish vicarious liability, plaintiff must prove that 1) Elizardo was negligent; 2) Elizardo was hired by Morgan to act as an agent or servant for Morgan; and 3) Elizardo was acting within the course and scope of an employment agreement with Morgan. Pretrial Order at 11; see also Feliz v. Turner Unifed School Dist. No. 202, 22 Kan. App.2d 849, 851-52 (1996). Defendant admits negligence for the purposes of this motion but asserts that Elizardo was not Morgan's agent and did not enter into an employment agreement with Morgan. Plaintiff responds that disputed issues of fact remain because "[Elizardo] was hired by Gary Morgan, was supervised by Gary Morgan, that Mr. Morgan had the power to fire him and he acted under Mr. Morgan's supervision." (Doc. 175 at 21). While Elizardo may have been an employee subject to supervision by Morgan, that does not lead to the conclusion that Elizardo was Morgan's agent or servant and that the two were acting pursuant to an employment agreement.

Plaintiff cites Bright v. Cargill, 251 Kan. 387 (1992) for the proposition that Elizardo's immunity as an employee, instead of an independent contractor, would not shield Morgan from liability. Plaintiff is correct. However, plaintiff must first establish Morgan's position as Elizardo's employer and he has failed to do so. The facts establish that Elizardo was hired to work for NCG, not for Morgan directly. NCG paid Elizardo, not Morgan. NCG entered into a contract with Elizardo, not Morgan. Elizardo was hired to be a ginner subject to instructions and directions by the individuals operating the gin, Morgan and Stucky. The facts do not establish nor create a dispute as to whether Elizardo was Morgan's agent or servant.

Accordingly, Morgan's motion for summary judgment on plaintiff's claim of vicarious liability is granted.

### C. Lone Star Gin Services, Top of Texas Gin Services and Top of Gin Services, Inc.

Morgan asserts that these business entities are not proper parties to this case because they were not involved in any work at NCG. While Morgan may have formed these entities at some point, Morgan's contracts with NCG and all payments for work performed have been issued in Morgan's name and not in the name of any of these three entities. Plaintiff has failed to establish any facts that tend to prove involvement of these entities with NCG. Plaintiff asserts that Morgan's formation of Lone Star Gin Services and the fact that Morgan "had business cards made with a business logo on them and had his business logo and name on his trailer that he pulled behind his truck" establishes that NCG contracted with Morgan in his capacity as the owner of Lone Star Gin Services. The court disagrees.

While Morgan may have operated a business, he was free to do so according to testimony from Stucky. NCG did not care what Morgan did on a day to day basis as long as the plant was running fine. Therefore, Morgan could have been operating his other business at the time he was working for NCG. These facts do not establish that NCG intentionally contracted with Morgan's business. Accordingly, defendant's motion for summary judgment is granted.

### D. Motion for Reconsideration

Morgan seeks reconsideration of this court's order denying summary judgment on the issue of Morgan's employment status. (Doc. 165). The court denied the motion after finding that numerous

-8-

disputes as to material facts exist.  Morgan asserts that the finding was error because the Kansas Supreme Court has stated that the Kansas Workers Compensation Act must be found to be applicable whenever it is reasonably possible to do so and because NCG had the right to control Morgan.

"Summary judgment may serve as an appropriate vehicle for resolving an agent's status as an employee under the provisions of the Workmen's Compensation Act." Danes v. St. David's Episcopal Church, 242 Kan. 822, 830-831, 752 P.2d 653, 659 (1988).  In determining whether an individual is an employee or independent contractor, no absolute rule exists.  Hartford Underwriters Ins. Co. v. State, Dept. of Human Resources, 272 Kan. 265, 270, 32 P.3d 1146, 1151 (2001).

> We note that an independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the employer, except as to the results or product of his or her work. The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.  An independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work.

Id. at 270-71.

Additionally, the Kansas Supreme Court has identified twenty additional factors to consider when determining an individual's

status.[5] In the motions for summary judgment that were before the court, both parties put forth numerous facts regarding Morgan's employment status. While control is a significant factor, there are also twenty additional factors to consider. The Kansas Workers Compensation Act is applicable where "reasonable." It is not reasonable at this juncture for the court to apply the Act. The facts are simply in dispute as to Morgan's status. The court will not go through each alleged fact in this order.

Morgan's motion for reconsideration is denied. (Doc. 159).

**E.   Motion to Compel Payment**

---

[5] "The factors include:

1) [t]he existence of the right of the employer to require compliance with instructions;
2) the extent of any training provided by the employer;
3) the degree of integration of the worker's services into the business of the employer;
4) the requirement that the services be provided personally by the worker;
5) the existence of hiring, supervision, and paying of assistants by the workers;
6) the existence of a continuing relationship between the worker and the employer;
7) the degree of establishment of set work hours;
8) the requirement of full-time work;
9) the degree of performance of work on the employer's premises;
10) the degree to which the employer sets the order and sequence of work;
11) the necessity of oral or written reports;
12) whether payment is by the hour, day or job;
13) the extent to which the employer pays business or travel expenses of the worker;
14) the degree to which the employer furnishes tools, equipment, and material;
15) the incurrence of significant investment by the worker;
16) the ability of the worker to incur a profit or loss;
17) whether the worker can work for more than one firm at a time;
18) whether the services of the worker are made available to the general public;
19) whether the employer has the right to discharge the worker; and
20) whether the employer has the right to terminate the worker."
Hartford Underwriters Ins. Co., 272 Kan. At 270-71.

Finally, Morgan has moved to compel plaintiff to pay defendant's expert witness Dr. Smith his fees for time spent responding to discovery pursuant to Fed. R. Civ. P. 26(b)(4)(A). (Doc. 169). Plaintiff paid Dr. Smith $3500 to take his deposition, Dr. Smith's daily deposition rate. Dr. Smith has billed an additional $2975. The additional fees are for four hours of preparation in advance of his deposition and four and one-half hours to review the deposition transcript after his deposition occurred at the rate of $350 an hour. (Doc. 170, Exh. D). Plaintiff asserts that Dr. Smith testified that he was only charging $3500 for his deposition and that the additional fees are unreasonable.

Pursuant to Fed. R. Civ. P. 26(b)(4)(A), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Subsection (C) of that rule continues that a court

> shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and ... the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

During Dr. Smith's deposition, plaintiff's counsel asked Dr. Smith "[w]hat are you charging me this morning to give your deposition?" Dr. Smith stated "[t]he daily rate of $3500." (Doc. 174, Exh. 3 at 11, lns.3-5). Plaintiff's counsel clearly asked Dr. Smith what the charge was for the daily deposition and did not ask Dr. Smith his charges for preparation or for Dr. Smith's total charges. A party requesting the deposition of an opposing party's expert is required to pay for that expert's reasonable time in preparation for

-11-

the deposition.  See Boos v. Prison Health Servs., 212 F.R.D. 578, 579-80 (D. Kan. 2002).

Plaintiff is responsible for Dr. Smith's fees for his time spent in preparation for the deposition.  Dr. Smith has billed four hours for his time spent preparing for his deposition.  Plaintiff, however, is not responsible for Dr. Smith's time spent reviewing his deposition unless defendant can establish that plaintiff requested Dr. Smith review his deposition.  See Monsour's Inc. v. Menu Maker Foods, Inc., 2007 WL 437780 at *2 (D. Kan. Feb. 6, 2007).  In a letter addressed to defendant's counsel, plaintiff's counsel asserts that it did not request Dr. Smith to do any items that Dr. Smith has billed for. (Doc. 170, Exh. E).

Therefore, the court must determine whether the fees charged for the deposition and the four hours of preparation at a rate of $350 are reasonable.  Dr. Smith charges a flat rate of $3500 a day for his deposition.  The total time spent in deposition for this case was roughly six hours, over a period of two different calendar days.  That equates to approximately $583 an hour for his deposition testimony. The court concludes that Dr. Smith's fee is reasonable in the narrow context of this case.  This issue must be decided on a case by case basis.  Here, the deposition was scheduled in Wichita and Dr. Smith flew into Wichita from Washington. This arrangement prevented Dr. Smith from working for the entire day, regardless of the amount of time Dr. Smith spent in deposition.  The deposition was not concluded in Wichita but was then resumed by telephone when Dr. Smith returned to Washington.  Dr. Smith then had to clear his calendar day to be available for the continuation of the deposition.  Under the

circumstances presented in this limited context, the flat rate of $3500 a day for a deposition is reasonable when the deposition schedule requires a physician to clear a day of appointments.

The court also finds that four hours of preparation for the deposition was reasonable. Dr. Smith's rate of $350 an hour is also reasonable, given the witness' level of experience.

Thus, plaintiff is charged with paying for Dr. Smith's four hours of preparation time at a rate of $350 an hour. Plaintiff will not be charged for the four and one-half hours Dr. Smith spent reviewing his deposition transcript.[6]

## IV. CONCLUSION

Morgan's motion for summary judgment (Doc. 128) is granted in part and denied in part. Morgan's supplemental motion for summary judgment (Doc. 137) is granted. Morgan's motion for reconsideration (Doc. 165) is denied. Morgan's motion to compel fees (Doc. 169) is granted in part and denied in part.

This case is set for trial on January 8, 2008. As a result of this and prior orders, a single claim of negligence remains against both Morgan and Elizardo.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is

---

[6] The issues addressed in this section emphasize the importance of a clear understanding between counsel and the expert witness regarding how the expert is to be compensated for his or her time. Even though plaintiff's counsel presumably is working on a contingent fee basis, his time is valuable. The time spent by plaintiff's counsel responding to the motion to compel arguably could have been avoided by a succinct agreement regarding payment of Dr. Smith's charges.

appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five typewritten pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed five typewritten pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this  16th  day of October 2007, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE